## BENNETT *et al* v. KIMMEL.

"A civil action is one founded on private rights arising either from contract or tort."  Civil Code (1910), § 5509.  "A court of equity will take no part in the administration of the criminal law."  As a general rule, equity will not restrain criminal or quasi-criminal prosecutions, nor on the other hand will equity "aid criminal courts in the exercise of their jurisdiction."  Where it is evident that private property and civil rights are invaded by the prosecution of a criminal proceeding, equity will interfere to protect them; but inasmuch as the allegations of the cross-action or cross-petition in the present instance are insufficient to show any special damage to the defendants, not common to the public, and there was a failure to so amend as to cure this defect pointed out by the special demurrers which the court sustained, the court did not err in dismissing the cross-petition on general demurrer, and in refusing an injunction.

No. 5258.  FEBRUARY 17, 1927.

Petition for injunction.  Before Judge Humphries.  Fulton superior court.  December 31, 1925.

The exception presented is to a judgment sustaining certain demurrers to the cross-action and petition of the defendants, and refusing an injunction.   Kimmel, who alleges himself to be a dealer in jewelry and kindred objects, principally at auction (though it is alleged that he also sells at private sale), brought a petition against Bennett et al., who are alleged to be jewelers at retail, seeking a recovery of damages in the sum of $25,000, and asking as ancillary thereto that the defendants be restrained and enjoined in certain respects stated in the petition.   Kimmel avers that the defendants "have conspired together and organized into an association called the Retail Jewelers' Association," with the intent and purpose of driving him out of business, and to this end they have instigated numerous prosecutions in the police court of the City of Atlanta, and procured the passage of an act of the General Assembly directed against him and his business, which act, for various reasons stated, is alleged to be unconstitutional and void. (This act is cited and summarized in the opinion, infra.)   To this petition the defendants interposed a demurrer and an answer in the nature of a cross-petition.   Several amendments to the petition were allowed.   The petitioner demurred to the cross-bill, which also had been amended.   It is alleged in the answer and cross-bill as follows:   The defendants are jewelers engaged in business in and about Atlanta.   George E. Daniel is the president of the Retail Jewelers' Association of Georgia, and R. C. Schneider is president of the local organization.   The plaintiff is engaged in the sale of jewelry by auction; he sells a great deal of worthless stuff, and gets whatever price he may; purchasers at such sales, without opportunity to inspect, are induced by the extravagant and misleading statements of the auctioneer to purchase many articles of little or no value at prices many times their true worth.   Defendants are legitimate merchants, selling standard goods upon careful and thorough examination by the purchasers.   They are perfectly solvent and financially responsible for every sale made, and they seek always to deal fairly and candidly with the public touching all of their sales.   They are not in direct competition with the plaintiff in the sale of his worthless and semi-worthless articles, but they are affected by having so many disappointed purchasers of jewelry in any community where such auctions are carried on, and in all such communities suspicion and distrust are created in the minds

of the purchasing public as to all articles of jewelry offered for sale. All other material allegations of the petition are denied.

By amendment the defendants further plead: (1) That the petitioner has persistently carried on his business as auctioneer of jewelry in violation of the act of the legislature of 1925, and, since the judgment of the superior court of September 18, 1925, has continued and is continuing, in open and flagrant violation and defiance of said statute, to carry on such auction business. "(a) That such act upon his part is a plain violation of the statute law of Georgia. (b) That the continuance of such sales, for the reasons set forth in their original answer, causes financial loss and damage to them, and that the amount of such damages is uncertain and impossible of ascertainment. (c) That petitioner is insolvent, makes no return of property for taxable purposes, and has outstanding judgments issued from the courts of Fulton County, unsatisfied, against him. (d) That while such conduct upon his part may injuriously affect the public at large to a greater or less extent, it especially affects them in their business as above set forth, and gives them the right as individuals to complain to this court." The defendants pray that Kimmel be permanently enjoined from said illegal acts, and temporarily restrained, etc. On October 17, 1925, the petitioner demurred to the cross-bill, as follows: "Petitioner demurs specially to the allegation in paragraph 1 of defendants' application, on the ground that the same is a mere general statement of a conclusion that the acts complained of cause financial damage to the defendants, without stating how they are damaged; and because the same does not state how much they are damaged in particular, nor why said alleged damage is impossible of ascertainment. 2. Petitioner demurs in like manner specially to the allegation of paragraph 1-d of defendants' application, on the ground that the same fails to state fully, clearly, and distinctly how the acts complained of specially affect defendants in their business in any way different from its alleged injurious effect on the public at large. And petitioner demurs specially to said application for injunction against him, and says that nothing therein contained shows any ground for interference by a court of equity with the normal processes of the law." These grounds of demurrer were on the same day sustained with leave to amend.

The defendants filed an amendment to their cross-action, alleging as follows: " (e) That they are jewelry merchants in the same city, and with places of business in the same vicinity as defendant Herman Kimmel's auction place. That said Kimmel, in plain violation of the law, sells at auction clocks, watches, jewelry, purses, handbags, and other articles of apparently the same character as are kept in stock and sold by petitioners. That such auction sales injure and damage them in their business in the following ways: (1) That the articles offered by him for sale and sold at such auctions are in many cases cheap imitations of the genuine articles of these classes kept in stock and sold by petitioners. For instance, an article will be sold as triple plate, which is only covered by a thin plating of silver or gold; and then articles will be represented and sold as sterling silver, which it is not, but only some inferior metal covered by a cheap plating of silver. A cheap, inferior, and practically worthless clock or watch will be sold as one of standard make and well-known merit. An inferior or defective diamond or other precious stone will be sold as one of first-class quality, and without flaws or defects; goods apparently of real leather will be sold as such, when they are really of some inferior substances resembling leather. At all such sales the purchaser has no opportunity to inspect the articles so sold, but necessarily depends upon the representations made by the auctioneer. In offering such articles for sale, defendant and his auctioneers make public statements to the possible purchasers to the effect that petitioners, who are regular jewelry merchants, charge exorbitant prices for the same articles, and assure the purchasers that they are getting the same articles as sold by petitioners for only a small part of the price petitioners would charge therefor. Upon such statements the goods are sold, and the purchaser finds in due time that he has been overreached and purchased an inferior or practically worthless article. The result is that all the minds of the buyers have been poisoned as to petitioners, and their opportunity to sell similar articles of real value to such purchaser is lost. (2) Another way in which such cases produce loss to petitioners is that many of the purchasing public are of limited means, with only a small amount which they can invest in such articles, which are so often purchased as presents by some member of the family for another; and so petitioners and other legitimate dealers in such

articles lose the opportunity of making a sale in such cases. (3) Another way in which such sales injuriously affect petitioners is, that, after finding that they have been overreached and defrauded, such purchaser loses confidence in all dealers in such articles, and condemns the bona fide honest jewelry establishment along with the auction house, and so turns to another purchaser of presents and ornaments and conveniences for his home, and petitioners' business suffers thereby. Petitioners show that it is naturally impossible to show losses in dollars and cents, but that they have each realized losses of sales under these conditions. (4) Petitioners show that this defendant has conducted his business as above outlined and had personally inured [?] in injuring their business in this way; and that these conditions exist so commonly that the legislature passed the act complained of, in order to cure this and attendant evils, and to protect the public and the legitimate jewelers from such evils. (5) Petitioners further show that these injuries are numerous and continuous; and if they could all be discovered and if defendant was solvent, it would be necessary to seek relief in many separate actions and at great expense; and for this reason also a court of equity has jurisdiction in the premises to prevent a multiplicity of suits."

Thereupon the plaintiff renewed his demurrer to the cross-bill as amended, as follows: "1. Petitioner specially demurs to subparagraph 1 of paragraph [e] of said amendment, as vague, uncertain, and indefinite, and as failing to clearly, fully, and particularly plead. (a) Because it does not state what goods of the plaintiff are cheap imitation, nor what articles are sold by plaintiff as triple plate when the same is, as alleged, only covered by a thin plating of gold or silver. (b) It does not state what articles are represented and sold as sterling silver, nor to whom. (c) Defendants do not allege what kind of clocks are sold as standard makes, nor to whom nor when. (d) Defendants do not show what precious stones are sold as perfect when they are defective, nor to whom. (c) The same infirmities exist as to the leather goods as charged. (f) Defendants do not say what purchasers are told that defendants charge exorbitant prices. (g) The defendants do not state what persons have had their minds poisoned against them. 2. Plaintiff demurs specially to paragraph 2 of the amendment, on the ground that it does not state what persons are deceived by

plaintiff, nor in what cases defendants or any one of them lose opportunity of making sales.　3. Plaintiff demurs to paragraph 3 of the amendment, on the ground that it does not indicate a single person who has ever been overreached or defrauded or has lost confidence in honest jewelry establishments.　4. Further demurring generally, plaintiff says that said alleged act of the General Assembly relied on by defendant is, as plaintiff has heretofore alleged, unconstitutional, null, and void as a penal statute, because, while it does attempt in the body of the act to make it a misdemeanor for persons to engage in the jewelry auction business and to prescribe a penalty therefor, the title of the act gives no intimation of any purpose so to do, by reason whereof the penal provisions of said act violate that part of the constitution of Georgia contained in art. 3, sec. 8, which provides that no law or ordinance shall pass which contains matter different from what is expressed in the title thereof. 5. In like manner demurring generally, the plaintiff says, as he has heretofore said, that said pretended act is wholly void as a prohibition, for the reason that, while the title thereof professes a purpose to prevent fraud and deception in jewelry auctions and to regulate their conduct, it goes beyond the professed purpose, and forbids them altogether, with certain immaterial exceptions, and that the title does not indicate such a purpose, by reason whereof it violates art. 3, sec. 8, of the constitution of Georgia, which provides that no law or ordinance shall pass which contains matter different from what is expressed in the title thereof."

The court passed an order which adjudged as follows: "1. Paragraphs 1, 2, and 3 of said demurrer [by the plaintiff] are sustained, and the portions of the cross-petition therein referred to are stricken.　2. Paragraph 4 of said demurrer does not refer to any question raised in the cross-petition as amended, and is therefore not passed upon by the court.　3. Paragraph 5 of the demurrer is overruled.　The caption of said act indicates that only specified persons will be permitted to hold auction sales, and that such sales are regulated by the act.　Dealing with the original demurrer filed by plaintiff to the cross-petition, it is ordered and adjudged as follows: . . Paragraphs 2 and 3 of said demurrer are sustained.　The prayer of defendants is for injunction, upon the ground that the alleged sales at auction are in violation of the act referred to, and that defendants are specially injured on ac-

count thereof. Defendants do not seek to recover damages, and the cross-petition as amended does not contain allegations that would warrant such recovery, if damages were sought. Neither would they justify a joint petition for damages. If defendants should be permitted to prosecute their cross-petition for injunction, it must appear that they suffer special damages not suffered generally by all jewelry merchants in the city, town, or community affected. If all jewelry merchants suffer damages alike, without regard to proximity or other special reasons, not applicable to all, the cross-petition could not be maintained by defendants as individuals. The defendants are allowed twenty days in which to amend to meet this ground of the demurrer, in default of which said cross-petition as amended stands dismissed in so far only as it seeks affirmative action against plaintiff." The time allowed for amendment was afterwards extended for seven days; and it was further "ordered that the time for filing any exceptions to the judgment of the court in this case shall be based upon a final ruling upon the time as extended by this order." Thereafter the court passed an order reciting the previous orders in the case, and setting forth that "defendants have not filed any amendment in compliance with the order of the court thereon: Whereupon it is ordered, considered, and adjudged that the demurrer of the plaintiff to paragraphs 1, 2, and 3 having been sustained, and no amendment filed, that the cross-petition be dismissed and the prayer for injunction by the defendants against the plaintiff be and the same is refused and denied, and that this order be and the same is the final judgment of the court in said cause."

*D. K. Johnston* and *Hooper & Hooper,* for plaintiffs in error.
*W. P. Carpenter* and *Alexander & McLarty,* contra.

RUSSELL, C. J. In 1925 the General Assembly passed "an act to prevent fraud and deception at jewelry auctions in this State, and to define who shall hold such auctions, and to regulate same." Ga. L. 1925, p. 310. This act requires that before any auction sale of jewelry is had, the dealer shall obtain a license from the commissioner of labor, to be conspicuously placed at the time and place to which the license was granted, and file a full inventory of all the articles to be sold, with the correct purchase-price of the same (verified by affidavit), which inventory shall also be filed by the ordinary and kept open for inspection for 60 days. The act

also requires a bond in the sum of $1,000, and a daily report to be filed with the ordinary, together with a complete list of the articles sold the day previous, and the price received for each article sold, verified by affidavit to be filed by the ordinary and kept open for the inspection of the public. The act further requires that each article exposed for sale shall have attached to it a tag upon which shall be plainly written or printed in English a true statement of its character or quality, etc., which must remain firmly attached to the article sold, and be delivered to the purchaser, and constitute a warranty that the article sold is what it is represented by the tag to be. The act contains various other regulations, and finally provides that a violation of any provision of the act is a misdemeanor, and that each violation shall constitute a separate and distinct offense. Kimmel filed the petition for damages and injunction referred to in the statement of facts. The record does not disclose the action of the lower court upon the matter of injunction, but the present bill of exceptions gives evidence that the original petition is still pending in the superior court of Fulton County. The only matter before this court for adjudication at this time is the cross-action filed by the original defendants, Claude Bennett et al. Our inquiry is confined to the merit or correctness of the judgment of the lower court in sustaining the demurrers of Kimmel to the cross-action brought against him by Bennett et al. The court sustained certain special demurrers, as set forth in the statement of facts, allowing leave to the defendants to amend in the respects pointed out in the first, second, and third paragraphs of the plaintiff's demurrer. The court did not pass upon the fourth ground of Kimmel's special demurrer, and the fifth ground of his demurrer was overruled. The defendants did not amend in compliance with the requirement of the order; and the court reiterated its previous ruling as to the special demurrers, and, on account of the failure to amend, sustained the general demurrer and dismissed the cross-action.

Waiving the point as to whether the exceptions are as fully presented as they might be, and pretermitting any consideration of aught else than the merits of the judgment dismissing the cross-action, we are of the opinion that the court correctly dismissed the cross-action. The legal merit of the petition filed by the plaintiff in the lower court is a matter to be determined upon demurrer or

other appropriate motion, and likewise the validity of his right to recover damages. Whether the plaintiff has been injured and damaged, and how much, if any, is a question of fact for a jury. The naked question in this case is, can the defendants enforce the act of 1925 by injunction? It is admitted that the cross-action was not filed in order to recover damages from Kimmel in behalf of the several defendants in the original suit, or any one of them. It is alleged that the damages are incapable of computation. However, it is argued that each and all of the defendants are injured in their several businesses by Kimmel's continual breaches of the law; and that as they have been brought into court by Kimmel, and the court has all the parties and the subject-matter before it, it is within the power of a court of equity to frame an appropriate civil remedy which will relieve in a single action each and all of the defendants. It is a well-settled maxim that as a general rule equity will not interfere with the progress of criminal or quasi-criminal prosecutions. This dogma of aloofness which should characterize. and distinguish the independence of the civil and criminal jurisdictions each from the other would seem to be equally applicable to the converse of the proposition; and so it may be said that equity can not be used to enforce the criminal law. If the statements contained in the cross-action which was dismissed by the trial judge are true, the criminal law provides not only an adequate but, we may say, the exclusive remedy for the ills of which respondents complain. The enforcement of the act of 1925 is not a matter of private concern, but is a duty of public import. In the absence of express legislative authority, no private individual, no matter what his calling or business, can be said as matter of right to be entitled to damages for the violation of a public law, except in an instance where he himself is peculiarly and personally specially affected without regard to any one else. If an individual is injured and damaged by the violation of a penal law of which he is the sole sufferer, he may be entitled to damages for the tort, for then it becomes a personal wrong affecting either his life, person, property, or reputation; but generally in the violation of a public law mere personal grievances are merged in the greater wrong against the State and its people. The act of 1925 is the crystallization of a matter of public policy into a public law, and matters of State policy can not be enforced by private litigation. The

State alone, acting through its officers provided by law, must enforce laws penal in their nature. Although the defendant in error contends that the act of 1925 was aimed solely at him, as long as the act of 1925 stands unassailed we must assume it to be an expression of the legislative will in an impartial exercise of the police authority representing a legitimate public policy of this State. If the act of 1925 is valid, the remedy of the jewelers is to institute criminal prosecutions, instead of attempting to enforce it by injunction. If it should be held to be invalid, the law would no more support a civil proceeding than a criminal prosecution.

*Judgment affirmed. · All the Justices· concur.*